NO. 12-1149

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**ALBERT CLATTERBUCK, CHRISTOPHER MARTIN,
EARL MCCRAW, JOHN JORDAN, AND MICHAEL SLOAN,**

*Plaintiffs–Appellants,*

v.

**CITY OF CHARLOTTESVILLE,**

*Defendant–Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
_____

*AMICUS CURIAE* **BRIEF OF THE THOMAS JEFFERSON CENTER
FOR THE PROTECTION OF FREE EXPRESSION
IN SUPPORT OF PLAINTIFFS–APPELLANTS**
_____

J. Joshua Wheeler, VSB # 36934
Clayton N. Hansen
The Thomas Jefferson Center for
the Protection of Free Expression
400 Worrell Drive
Charlottesville, VA 22911
(434) 295-4784

Counsel for *Amicus Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

who is _____, makes the following disclosure:
      (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO

2.     Does party/amicus have any parent corporations?                              YES     NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              YES     NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?          YES     NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     YES     NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?               YES     NO
If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____           _____
(signature)                                              (date)

11/17/2011
SCC

# TABLE OF CONTENTS

**STATEMENT OF INTEREST OF *AMICUS CURIAE*** ...................................1

**SUMMARY OF ARGUMENT** ..........................................................1

**ARGUMENT** ............................................................................2

I.    Dismissal Under Rule 12(b)(6) of a Well-Pleaded Complaint Challenging a Restriction of Protected Speech Inadequately Protects Plaintiffs' Constitutional Rights and Is Inconsistent With Settled First Amendment Doctrine ...........................................................................2

    A.    The Constitution Requires the Government to Justify Its Restriction of Protected Expression ................................2

    B.    The Government's Burden Cannot be Satisfied Without Presenting Actual Evidence That Its Actions Are Constitutional .....................4

    C.    The Government Cannot Satisfy Its Burden Prior to Discovery .....7

II.   By Dismissing Appellants' Challenge Prior to Discovery, the District Court Effectively Absolved the Government of Its Burden to Demonstrate That Its Solicitation Ordinance Was a Constitutional Restriction of Protected Speech ............................................11

**CONCLUSION** .........................................................................17

**CERTIFICATE OF SERVICE** ........................................................18

**CERTIFICATE OF COMPLIANCE** .................................................19

i

# TABLE OF AUTHORITIES

*Case*                                                                    *Page*

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996)...................................3

*Beasley v. Arcapita Inc.*, 436 Fed. Appx. 264 (4th Cir. 2011)..........................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)......................................7, 8

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983)............................7

*Casey v. City of Newport*, 308 F.3d 106 (1st Cir. 2002) .....................................3

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557 (1980)................................................................................................7

*Deegan v. City of Ithaca*, 444 F.3d 135 (2d Cir. 2006).....................................15

*Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012) ..............................2

*Edenfield v. Fane*, 507 U.S. 761 (1993) ..........................................................3, 7

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir.1999) ..............................8

*E.I. duPont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435 (4th Cir. 2011) ...........................................................................................................10

*First National Bank v. Bellotti*, 435 U.S. 765 (1978)...........................................6

*Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995)........................................5

*Friedman v. Rogers*, 440 U.S. 1 (1979)...............................................................7

*Frisby v. Shultz*, 487 U.S. 474 (1988)................................................................13

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008)........................................7

ii

*Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457 (1997) .........................7

*Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000) ...........................................14

*Harrison v. United States Postal Serv.*, 840 F.2d 1149 (4th Cir. 1988)...............8

*Henry v. City of Cincinnati*, No. C-1-03-509, 2005 WL 1198814 (S.D. Ohio April 28, 2005).....................................................................................................10

*Horina v. City of Granite City*, 538 F.3d 624 (7th Cir. 2008).............................3

*Ibanez v. Florida Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136 (1994) ........5

*In re Primus*, 436 U.S. 412 (1978) ......................................................................6

*In re R.M.J.*, 455 U.S. 191 (1982) .......................................................................7

*Johnson v. Whitehead*, 647 F.3d 120 (4th Cir. 2011) ..........................................3

*Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011)......................10

*Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85 (1977)..............................7

*New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3rd Cir. 1986) ... .......................................................................................................................3

*Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377 (2000)................................5

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) .........13

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ..........................2

*Psinet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004).......................................5

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997)...........................3

*Republican Party of North Carolina v. Martin*, 980 F.2d 943(4th Cir. 1992).....8

iii

*Smith v. City of Fort Lauderdale*, 177 F.3d 954 (11th Cir. 1999)......................15

*Turner Broadcasting Systems v. F.C.C.*, 512 U.S. 622 (1994) ...............5, 13, 16

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) .......................................3

*United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) ........
..................................................................................................................5, 10

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) ....2, 3

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002).....................................................8

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)..........................................13

*Witthohn v. Federal Insurance Co.*, 164 Fed. Appx. 395 (4th Cir. 2006) ...10, 11

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985) .........................................................................................................7

## OTHER:

U.S. Const.
  amend. I ........................................................................................passim

Federal Rule 12(b)(6)...............................................................................passim

Federal Rule of Evidence 803(8)(c) ................................................................12

5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §1357 (3d ed. 1998) .......................................................................................9, 11

16B C.J.S. *Constitutional Law* §828 (2012).........................................................6

Charlottesville City Code Section 28-31(a)(9).................................................13

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

The Thomas Jefferson Center for the Protection of Free Expression is a nonprofit, nonpartisan organization located in Charlottesville, Virginia. Founded in 1990, the Center has as its sole mission the protection of free speech and press. The Center has pursued that mission in various forms, including the filing of *amicus curiae* briefs in this and other federal courts, and in state courts around the country.

## SUMMARY OF ARGUMENT

When the government acts to limit speech protected by the First Amendment, it bears the burden of establishing the constitutionality of its restriction. This burden cannot be satisfied by language in the pleadings alone. The government must offer evidence of the harm it fears, the source from which it emanates, and that the challenged restriction is tailored to eliminate it. Dismissal of a First Amendment complaint prior to discovery essentially relieves the government of this constitutional burden. The City of Charlottesville moved to dismiss without providing any evidence that the

---

[1] Pursuant to Fed. R. App. Proc. 29, all the parties have consented to the filing of this *amicus* brief. This brief was authored in whole by counsel for *amicus curiae*. No party or any person other than *amicus* contributed money to fund the preparation and submission of this brief.

1

solicitation ordinance challenged by Plaintiffs was narrowly tailored to serve an important government interest. Rather than granting Defendant's 12(b)(6) motion, the District Court should have converted it to one for summary judgment and postponed ruling until after discovery was complete and it could properly be shown that the government had met its burden under the First Amendment.

## ARGUMENT

I.    Dismissal Under Rule 12(b)(6) of a Well-Pleaded Complaint Challenging a Restriction of Protected Speech Inadequately Protects Plaintiffs' Constitutional Rights and Is Inconsistent With Settled First Amendment Doctrine

A.    The Constitution Requires the Government to Justify Its Restriction of Protected Expression

It is well settled that "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986) ("In the context of governmental restriction of speech, it has long been established that the government cannot limit speech protected by the First Amendment without bearing the burden of showing that its restriction is justified."); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1120 (10th Cir. 2012) ("When a law

2

infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality."). This burden remains with the government regardless of the level of scrutiny to which the challenged restriction is subjected. *See, e.g.*, *Playboy Entertainment Group*, 529 U.S. at 816 (applying strict scrutiny); *Reno v. American Civil Liberties Union*, 521 U.S. 844, 879 (1997) (same); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (applying intermediate scrutiny); *Casey v. City of Newport*, 308 F.3d 106, 111 (1st Cir. 2002) (applying intermediate scrutiny to a time, place, and manner restriction); *Horina v. City of Granite City*, 538 F.3d 624, 633 (7th Cir. 2008) (same); *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250, 1255 (3rd Cir. 1986) (same); *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993) (evaluating the reasonableness of a restriction on commercial speech). *Cf. Johnson v. Whitehead*, 647 F.3d 120, 135 (4th Cir. 2011) (noting, in a Fifth Amendment challenge to a naturalization statute, that "intermediate scrutiny places the burden of establishing the required fit [between the government's action and its alleged interest] squarely upon the government.") (quoting *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (applying intermediate scrutiny in a Second Amendment challenge)).

3

Allocating this burden to the government serves two important purposes. First, it reinforces the constitutional dictate that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment is not, of course, absolute. The government may, in particular circumstances, enact any number of permissible restrictions on expressive activity. However, the courts have rightly concluded that a challenged regulation will not stand unless the government proves that its actions are constitutional. Second, requiring the government to justify its restriction of protected speech acknowledges the inherent imbalance of power between those seeking to restrict speech and those whose voices are silenced. The information necessary to sustain a constitutional challenge, *i.e.*, evidence of specific harm to a substantial or important government interest and the means sought to redress that harm, will almost always be held exclusively by the government. The government's burden ensures that plaintiffs are not required to ponder and preemptively rebut justifications not yet offered by those who wish to restrict protected expression.

    B.    <u>The Government's Burden Cannot be Satisfied Without Presenting Actual Evidence That Its Actions Are Constitutional</u>

This court has held that "when the government defends a regulation of speech as a means to redress past harms or prevent anticipated harms, it must do

4

more than simply 'posit the existence of the disease sought to be cured.'"

*Psinet, Inc. v. Chapman*, 362 F.3d 227, 238 (4th Cir. 2004) (quoting *Turner*

*Broadcasting Systems v. F.C.C.*, 512 U.S. 622, 664 (1994)). The government's

burden is not satisfied by its words alone, rather "it must demonstrate that the

recited harms are real, not merely conjectural, and that the regulation will in

fact alleviate these harms in a direct and material way." *Turner*, 512 U.S. at

664; *see also Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 379 (2000)

("This Court has never accepted mere conjecture as adequate to carry a First

Amendment burden."); *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 641

(1995) ("Our cases require something more than a few pages of self-serving and

unsupported statements by the State to demonstrate that a regulation directly

and materially advances the elimination of a real harm."); *United States v.*

*National Treasury Employees Union*, 513 U.S. 454, 483 (1995) (O'Connor, J.,

concurring in part and dissenting in part) (Intrusions upon First Amendment

liberties are not justified by the government's "bare assertion of a laudable

purpose."); *Ibanez v. Florida Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136,

146 (1994) (The government may not simply assert that a regulation

accomplishes its intended purpose in order to "supplant [its] burden to

demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.").

While there is no set standard for what constitutes a sufficient "demonstration" in any given case, the vast weight of authority suggests that the government cannot satisfy its burden without producing at least some admissible evidence to support its claims. To ensure that the government does not suppress First Amendment rights absent a compelling need to do so, the government must actually prove the existence of the evil it fears, the source from which that evil emanates, and that the chosen means are necessary to eliminate it. *See, e.g.*, *First National Bank v. Bellotti*, 435 U.S. 765, 789 (1978) (striking down a campaign financing regulation because the State had failed to show "by record or legislative findings that corporate advocacy threatened imminently to undermine democratic processes"); *In re Primus*, 436 U.S. 412, 434 n.27 (1978) (holding that rights of expression and association may not be abridged "without substantial support in the record or findings of the state court"). *See also* 16B C.J.S. *Constitutional Law* §828 (2012) ("The state has the burden of proving that the legislation is substantially related to an important government interest, and the government's position *must be supported by substantial evidence*.") (emphasis added).

6

Even in cases involving commercial speech where restrictions are subject to a less stringent form of review, the courts impose upon the government an "obligation to establish the empirical reality of the problems it purports to be addressing." *Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457, 493 (1997) (Souter, J., dissenting). In *Edenfield v. Fane*, for example, the Court held that a government's burden:

> . . . is not satisfied by mere speculation or conjecture; rather a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.

507 U.S. at 770–71 (citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 648–49 (1985); *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 73 (1983); *In re R.M.J.*, 455 U.S. 191, 205–06 (1982); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 569 (1980); *Friedman v. Rogers*, 440 U.S. 1, 13–15 (1979); *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 95 (1977)).

C.    The Government Cannot Satisfy Its Burden Prior to Discovery

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and should be granted only if the complaint "does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atlantic Corp. v.*

7

*Twombly*, 550 U.S. 544, 570 (2007)). The court must "assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint may therefore be dismissed for failure to state a claim only if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). Moreover, in cases involving the alleged violation of civil rights, this court has declared that "we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (internal quotation marks omitted)).

If the government's burden to justify the constitutionality of actions abridging free speech does not preclude dismissal prior to discovery, it is a burden in name only. In order to satisfy its burden, the government must

8

respond in an open and meaningful manner to plaintiffs who feel their First Amendment rights have been unconstitutionally restricted. Yet, under the Federal Rules, a 12(b)(6) motion must be made *before* the service of any responsive pleading. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §1357 (3d ed. 1998) ("Technically, a post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the plaintiff's failure to state a claim for relief."). By moving to dismiss at this stage, the government seeks not just to avoid producing the evidence necessary to uphold its restriction, but to do so without ever actually having to answer the plaintiff's complaint.[2]

As discussed above, the government's constitutional burden cannot be satisfied without evidence—evidence which may not properly be included in the government's motion to dismiss. Thus, when presented with a motion to dismiss under these circumstances, the proper course of action is clear; the court should decide the 12(b)(6) motion as if it were instead one for summary

---

[2] See, for example, the City's Rebuttal Brief in Support of Motion to Dismiss, at 4, in which they inform the lower court that "at this stage of the pleadings where the case is being reviewed on a motion to dismiss, the City of Charlottesville does not admit or deny allegations in the Complaint."

9

judgment. *Witthohn v. Federal Insurance Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006). Only then can the government establish anything beyond the "self-serving and unsupported statements," *National Treasury Employees Union*, 513 U.S. at 483, contained within its pleadings. *See also Henry v. City of Cincinnati*, No. C-1-03-509, 2005 WL 1198814, at *9 (S.D. Ohio April 28, 2005) (denying Defendant's motion to dismiss complaint challenging the constitutionality of a Cincinnati solicitation ordinance on grounds that the City's burden could not be satisfied prior to discovery).

The Rules generally direct that when a party moves to dismiss under 12(b)(6), the court is not to consider any extraneous material. A narrow exception exists, however, for documents attached to, incorporated in, or explicitly relied on by the complaint, so long as the authenticity of those documents is undisputed. The court may also consider official public records, court records, and any facts of which judicial notice may be taken. *See, e.g.*, *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011) (Court may consider documents referenced by complaint and matters of which it may take judicial notice.); *E.I. duPont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the

10

pleadings and cannot be considered on a Rule 12(b)(6) motion."); *Beasley v. Arcapita Inc.*, 436 Fed. Appx. 264 (4th Cir. 2011) (Documents attached to motion to dismiss may be considered if integral to and explicitly relied on by complaint and if plaintiffs do not challenge its authenticity.). Should a court elect not to exclude such evidence, the 12(b)(6) motion must be treated as a motion for summary judgment and disposed of as provided in Rule 56. *Witthohn* 164 Fed. Appx. at 396. If a motion to dismiss is thus converted into a summary judgment motion, both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs. *See* Wright & Miller, *supra*.

II.     By Dismissing Appellants' Challenge Prior to Discovery, the District Court Effectively Absolved the Government of Its Burden to Demonstrate That Its Solicitation Ordinance Was a Constitutional Restriction of Protected Speech

The District Court's decision to grant the government's 12(b)(6) motion was the product of its conclusion that "[t]he challenged subsections are content-neutral, narrowly tailored time, place, and manner limitations on solicitation." J.A. 27. Examination of the record, however, reveals that the government produced no admissible evidence whatsoever to support its asserted justifications. The closest the government came to doing so was a single sentence in its final brief to the court:

11

> While the Complaint alleges that the regulations assailed are not content neutral and should be construed as such, at least at the motion to dismiss stage, Defendant notes that *the reasonableness of the regulations and significant interests protected and upon which the regulations were based are a matter of public record* available at www.charlottesville.org by accessing the video archive of City Council meetings of August 2, 2010 and August 16, 2010.

Defendant's Rebuttal Brief in Support of Motion to Dismiss, at 5 (emphasis added). Of the many problems with the government's statement,[3] two are particularly damning. First and foremost, this "evidence" proffered by the government fails to allege, let alone prove, that the ordinance was narrowly tailored to serve an important government interest.[4] Second, the video archive of City Council meetings, while freely available to the public, is in no way analogous to the "official public records" cited in the cases above, *see* Section I.C., *supra*, nor would it qualify under the public records exception of the Federal Rules, *see* Fed. R. Evid. 803(8)(c), and therefore should not have been considered by the District Court.

Assuming *arguendo* that the District Court and the government correctly identified the ordinance as a content-neutral regulation of the time, place, and

---

[3] For a detailed discussion of flaws not examined here, see Brief of Plaintiffs–Appellants at 19–20.

[4] While *amicus* agrees with Plaintiffs–Appellants' belief that the challenged ordinance is, in fact, a content-based restriction of speech, the government's pleadings were insufficient to satisfy any level of heightened scrutiny.

12

manner of speech, the government would still be required to prove that the

fifty-foot buffer zone established by Section 28-31(a)(9) of the Charlottesville

City Code was "narrowly tailored to serve a significant governmental interest,"

and that it leaves open "ample alternative channels of communication." *Perry

Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see also

Turner*, 512 U.S. at 665 (Where a regulation of protected expression is

determined to be content-neutral, "the government still bears the burden of

showing that the remedy it has adopted does not 'burden substantially more

speech than is necessary to further the government's legitimate interests.'")

(quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)); *Frisby v.

Shultz*, 487 U.S. 474, 485 (1988) ("A statute is narrowly tailored if it targets and

eliminates no more than the exact source of the 'evil' it seeks to remedy.").

     As an initial matter, it is unclear from the government's pleadings exactly

what interest or interests are allegedly served by the buffer zone. Throughout its

briefs, the government alternately identifies as the impetus for its regulation of

speech: an "interest in public safety and traffic safety," Defendant's Brief in

Support of Motion to Dismiss at 4; "public safety, protecting individual's rights

to be left alone and public safety or traffic control," *Id.* at 6; and "accident

prevention," *Id.* at 7. The District Court fared no better in its attempt to clearly

13

articulate the government's interest. The court first suggests that the buffer zone was a response to "pedestrians . . . being 'distracted' in and near the crossings." J.A. 26. Then, it proposes that the government was concerned with the solicitation of "captive audiences," and that the buffer zone was intended to protect the right of "a person waiting or attempting to cross one of the Mall's two vehicular crossings . . . to proceed unimpeded." *Id.* at 27.

It is unclear how the government could expect to establish that its restriction was narrowly tailored to "target[] and eliminate[] . . . the 'evil' it seeks to remedy," without conclusively identifying the evil's true source. However, had it done so, the government would still have to present admissible evidence that it had "limited the application of the law to what is necessary to promote its legitimate interest." *Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir. 2000). As noted, the government presented no such evidence, nor could it have properly done so prior to discovery.

Despite correctly articulating the standard for evaluating time, place, and manner restrictions, the District Court proceeded as if the narrow tailoring requirement was nonexistent. The court's explanation of why the ordinance passed constitutional muster makes no mention of narrow tailoring whatsoever:

> [T]he ordinance does not distinguish between favored and disfavored solicitation, and it does not discriminate based on a

14

> solicitor's identity. The ordinance leaves open most of the Mall's 'channels of communication,' while protecting captive audiences . . . in just a very few areas of the Mall.

J.A. 27, (internal citations omitted). The closest the court came to a discussion of narrow tailoring was its suggestion in a footnote that "Charlottesville's solicitation ordinance affords much more deference to Plaintiff's First Amendment rights" than a Florida law upheld by the Eleventh Circuit. J.A. 27. The ordinance at issue in that case, however, banned solicitation along a five-mile stretch of beach, and the governmental interests served by the regulation (unmentioned in the District Court's opinion, but described by the Eleventh Circuit as "providing a safe, pleasant environment and eliminating nuisance activity on the beach"), are wholly unlike any of the potential interests suggested by the government and the court here. *Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999). The fact that the City of Fort Lauderdale was able to demonstrate the constitutionality of its ordinance under a particular set of circumstances says nothing about what the City of Charlottesville may or may not have been able to demonstrate under the circumstances relevant to this case. *Cf. Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006) (Narrow tailoring demands a "fact specific and situation specific inquiry.").

15

As discussed above, the government's burden is not satisfied by
formulaic recitations of neutrality,[5] unproven claims of narrow tailoring,[6] and
vague suggestions of motivating interests. By the same token, a court's
"obligation to exercise independent judgment," *Turner*, 512 U.S. at 666, when
testing the constitutionality of a speech restriction is not satisfied where it
assumes away the government's burden and ignores gaping holes in the
evidentiary record.

---

[5] In its briefs, the government describes the challenged ordinance as "content
neutral" on no fewer than ten occasions.

[6] The government, while offering no evidence in support of the claim, describes
its restriction of protected speech as "narrowly tailored" at least ten times. On
five other occasions, the government deems its own restrictions to be
"reasonable."

**CONCLUSION**

For the foregoing reasons, The Thomas Jefferson Center for the Protection of Free Expression, as *amicus curiae*, urges this court to recognize that the government's burden to justify restrictions of protected expression necessarily precludes dismissal of a well-pleaded First Amendment complaint prior to discovery. This court should furthermore reverse the District Court's dismissal of Plaintiffs' claim for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/  J. Joshua Wheeler
J. Joshua Wheeler
The Thomas Jefferson Center for
the Protection of Free Expression
400 Worrell Drive
Charlottesville, VA 22911

Counsel for *Amicus Curiae*

Date: May 14, 2012

17

# CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:


_____          _____
        Signature                                                                    Date

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. _____      Caption: _____

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines.  Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines.  Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ ]     this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]     this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ]     this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

[ ]     this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____